CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 2 4 2006
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:04CV00401 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARGARET BLACKBURN, | ) | |
| | ) | By: James C. Turk |
| Defendant. | ) | Senior United States District Judge |

The United States of America brought this civil action against the defendant, Margaret Blackburn ("Blackburn"), to collect upon a promissory note. This case is now before the Court on cross-motions for summary judgment. The parties have filed supporting briefs and the Court heard oral arguments on February 23, 2006. For the following reasons, the Plaintiff's motion for summary judgment is **Granted**, and the Defendant's motion for summary judgment is **Denied**.

I.

The defendant, Margaret Blackburn, applied for a housing loan with the United States Department of Agriculture's Farmers Home Administration ("FmHA") which was subsequently approved. On April 5, 1990, Blackburn signed a contract with the FmHA in which the agency would convey real property located in Draper, Virginia ("Draper property") to Blackburn for a $40,500 mortgage. See Plaintiff's Supplemental Exhibit 1, April 5, 1990 Standard Sales Contract. On May 30, 1990, a quitclaim deed was executed pursuant to the terms of the sales contract. See Defendant's Exhibit 6, May 30, 1990 Quitclaim Deed. The deed stated that the

1

conveyance is made "for the sum of TEN DOLLARS ($10.00) and other valuable consideration." Id.

On June 26, 1990, Blackburn signed a "boilerplate" promissory note to be indebted to the FmHA in the amount of $40,500. See Plaintiff's Exhibit A, June 26, 1990 Promissory Note. In addition, Blackburn entered into a subsidy repayment agreement with the FmHA that provided her with assistance in paying the note. See Plaintiff's Exhibit C. June 26, 1990 Subsidy Repayment Agreement. Any financial assistance provided to Blackburn could be recaptured by the FmHA. Id. To secure the note and subsidy repayment agreement, a deed of trust was executed by Blackburn that conveyed the Draper Property to a third-party trustee for the benefit of the FmHA. See Exhibit B, June 26, 1990 Deed of Trust.

From July 1990 to April 2001, Blackburn made the required monthly payments on the note with financial assistance through the subsidy repayment agreement. The only considerable lapse of payments during this period was from April 1997 to May 1998. During this period, the FmHA was transformed into the Rural Housing Service ("RHS") and it became the successor-in-interest to the loans made by the FMHA. Because of the arrearage that accrued from April 1997 to May 1998, the RHS notified Blackburn of the possibility of foreclosure on the Draper property. The property could not be foreclosed on, however, because the deed of trust that conveyed the property to the trustee as security on the note was invalid. Subsequently, Blackburn, personally and with the assistance of legal aid organizations, attempted to negotiate a re-amortization of the note. Such negotiations were unsuccessful and this civil action ensued.

The United States argues that judgment for the delinquent amount against Blackburn is appropriate because the note that Blackburn signed was executed in order to allow her the

2

financial means to purchase the Draper property. Blackburn took possession of the property and she is liable for the debt on the note. Blackburn states in her cross-motion for summary judgment that judgment is proper for her because she does not owe under the note. Blackburn contends that the FmHA conveyed the Draper property to her for $10 and that she never received any of the loan proceeds under the note. She asserts that the payments she made under the note were "prepayments" that acted as a credit on her account and which RHS actually owes her. Since the location of the real property and contract execution were in Virginia, the laws of Virginia will govern this case where appropriate.

## II.

Upon motion for summary judgment, the Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The mere existence, however, of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e). Instead, the non-moving party

3

must respond by affidavits or otherwise present specific facts showing that there is a genuine issue of disputed fact for trial. Id. If the non-moving party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### A.

The material issue is whether there is an enforceable obligation on the part of Blackburn to pay the RHS. Neither party disputes the terms nor the validity of the sales contract, promissory note, or subsidy agreement. Thus, it is presumed that the written contracts embody the true intent and understanding of the parties of the obligations and duties under the contracts. See Morris Oil Corp. v. Maryland Cas. Co., 136 F. Supp. 63, 65 (W.D.Va. 1955) ("[A] written contract is presumed to embody the true intent and understanding of the parties thereto . . . ."). Under the sales contract, Blackburn promised to pay $40,500 for the real property conveyed to her. She signed the sales contract and its terms are enforceable against her. Under the promissory note, Blackburn promised to pay the amount loaned to her. She signed the note and its terms are enforceable against her. Under the subsidy repayment agreement, Blackburn promised to repay any assistance she received under the agreement. She signed the agreement and its terms are enforceable against her. Therefore, she is presumptively liable for the amount that she is currently delinquent under the promissory note and subsidy repayment agreement, absent any allegations of fraud, mutual mistake, or incapacity to contract.

Blackburn contends that although she signed the note, she does not owe a debt under the note because she never received the loan proceeds. If Blackburn never received the loan

4

proceeds, she would not be obligated to repay funds she never acquired. Blackburn's assertion that she did not receive the loan proceeds, however, does not create a material dispute of fact because of the substantial credible evidence weighing against her assertion..

Blackburn entered into a contract on April 5, 1990 to pay $40,500 for conveyance of the Draper property to her. Pursuant to the sales contract, the FmHA conveyed a quitclaim deed for the Draper property to Blackburn in order for her to re-convey the property to the third-party trustee for it to act as security on the note. See Plaintiff's Supplemental Exhibit 1 at p.2 para. B. The note clearly states that $40,500 was advanced to her and her signature is on the page on which the distribution was recorded. See Plaintiff's Exhibit B at 2. The validity of the note is not in question because Blackburn has stated herself that, "the Note speaks for itself." See Defendant's Supplemental Answer at 2.

The underlying fact here is that Blackburn has misconstrued the series of events that she transacted with the FmHA. The FmHA conveyed Blackburn the Draper property in return for a seller-financed mortgage of $40,500. When Blackburn signed the promissory note, the loan proceeds were constructively in her possession and then passed directly to the FmHA who was the intended recipient of the funds under the sale contract. Because of the debt that Blackburn had undertaken, she was able to purchase the Draper property. She is mistaken that she did not receive the loan proceeds and is not obligated to pay the note. Although she may never have physically received a loan check, she received the benefits of the loan proceeds because she purchased the Draper property with those proceeds. Blackburn has not been "prepaying" (in the sense that she uses the term) on the loan because she is actually indebted for the amount received on the note.

5

The undisputed evidence is that Blackburn has lived on the Draper property since the conveyance and she has regularly paid the monthly installment payments on the note for most of the period from 1990 to 2001. She has been receiving the benefits of the loan since 1990 because she purchased the Draper property through the loan and has been living on the property since then. The terms of the contractual documents, along with the undisputed factual history clearly weigh as overwhelming credible evidence against Blackburn's averment that she never received the loan proceeds.

Although it is true that the Court should not come to conclusions on factual disputes or weigh conflicting evidence in determining whether a genuine issue of material fact exists, a nonmoving party may not survive summary judgment with a mere scintilla of evidence supporting its position. See Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). The credible documentary evidence and clear factual history weigh heavily against Blackburn's contention and no genuine issue of material fact is created when "the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. Self-serving assertions such as Blackburn's statements will not, without factual support in the record, defeat a motion for summary judgment. See Williams v. Food Giant, Inc., 370 F.3d 423, 433 (4th Cir. 2004) (stating that a party's mere self-serving opinion cannot, without objective corroboration, defeat summary judgment); see also United States v. Torres, 142 F.3d 962, 968 (7th Cir. 1998). Here, as in Torres, the nonmoving party attempted to create a dispute of a material issue by presenting self-serving testimony that contradicted credible evidence. Blackburn's bare-bone assertion that she never received the loan proceeds cannot create a disputed material issue when it contradicts written evidence in the note itself, which she signed and which she avers is valid,

6

that states the loan proceeds were distributed to her, and clearly contradicts the purpose and nature of the transaction. Cf. S.E.C. v. Hughes, 124 F.3d 449, 456 (3d Cir. 1997) (holding that mere assertions that party did not receive the benefit of the funds does not create a triable issue of fact in light of the substantial evidence to the contrary).

Blackburn's mistaken impression as to the true nature of this real property transaction does not create a genuine disputed material issue as to her contractual obligations and duties under the contract. As Blackburn has averred, "The [Contract] Speaks for Itself," see Defendant's Supplemental Answer at 2, and the contractual documents state that she is liable for the note from which she has benefited. Although Blackburn's mistaken view does not affect the written terms of the contract, her state of mind as to the nature of the transaction could be relevant as to whether there is a material issue as to the enforceability of the contracts against her due to incapacity or mistake.[1]

**B.**

First, if Blackburn's assertions as to her state of mind when she signed the note are viewed in the light most favorable to her, the relevant issue seems to be whether the contract can be voided due to a mistake on her part as to the true cost of the property conveyance. Blackburn alleges that she was under the impression that the FmHA was conveying the Draper property to her for literally $10, rather than for the assumption of a $40,500 mortgage, and that the promissory note was a loan to assist in paying for any repairs that needed to be done on the

---

[1] The Court will liberally construe Blackburn's initial answer as alleging mistake or incapacity because she was proceeding *pro se*. Even under liberal standards, however, a claim of fraud has not been alleged by the defendant.

7

Draper property.

Mistake at the time of contracting can be a basis for rescission of a contract. In Virginia, however, a unilateral mistake cannot be the basis for rescinding a contract; only a mutual mistake will allow relief from contractual obligations. See Langman v. Alumni Ass'n of the Univ. of Va., 247 Va. 491, 503, 442 S.E.2d 669 (1994) ("A unilateral mistake will not invalidate a contract."); Ward v. Ward, 239 Va. 1, 5, 387 S.E.2d 460 (1990) (stating that a contract can only be set aside if the mistake is mutual).

In determining whether a mutual mistake of fact existed at the time of the agreement, the inquiry is whether each party held the same mistaken belief with respect to a material fact at the time the agreement was executed. See Seaboard Ice Co. v. Lee, 199 Va. 243, 252, 99 S.E.2d 721 (1957). The FmHA avers, and the contractual documents memorialize, the fact that the Draper property was being conveyed to her for a mortgage of $40,500. Here, it was only Blackburn that was mistaken as to the true price of the conveyance of the Draper property to her.

The housing loan for which Blackburn was approved is implemented under the Section 502 program. See 42 U.S.C. § 1472. Created by Title V of the Housing Act of 1949, the section originally authorized the FmHA to make direct loans to owners of adequate farms who were unable to obtain credit on terms that they could reasonably fulfill. See Neal v. Bergland, 646 F.2d 1178, 1180 (6th Cir. 1981); Pealo v. Farmers Home Admin. of the U.S. Dep't of Agric., 562 F.2d 744, 745 (D.C. Cir. 1977). In the 1960s, the program was expanded to make eligible for the Section 502 loans, any low- or moderate-income person who desired to live in a rural area, was unable to secure decent housing, and could be reasonably expected to repay the loan. This was the basis of the FmHA's authority to approve Blackburn's loan application. The FmHA did not

8

and could not give Blackburn the Draper property for a peppercorn of consideration because no statutory authority existed for the agency to wantonly give people free housing. See Neal, 646 F.2d at 1180 (stating that under the authority granted in section 502, the FmHA is allowed to provide financial assistance to eligible persons only through direct loans).

It seems that Blackburn's mistake as to the sale price of the Draper property derived from the quitclaim deed that stated that the conveyance was made for $10 and "other valuable consideration." The sales contract, however, controls the transaction because the conveyance and note were conducted under the terms agreed under it. Furthermore, there is no evidence to the contrary that the FmHA told her otherwise or that any fraud existed at the time of execution. The sales contract, note, and subsidy agreement clearly describe the nature of the transaction and the sale price. Ordinarily, parties to a written agreement are bound by its contents which they have had the opportunity to read, and they may not escape the obligations and liabilities which it embraces by claiming ignorance of its contents or a failure to fully understand the ramifications of the obligations contained in it. See Mueller v. Commonwealth, 15 Va. App. 649, 654, 426 S.E.2d 339 (Va. Ct. App. 1993). One party's mistaken belief that the clear and specific language of a written contract does not mean what it says is not a mutual mistake. Blackburn's mistake or failure to read the contract's terms does not create a material issue to allow a claim of mutual mistake of fact to proceed.

Furthermore, Blackburn's mistaken impression as to the terms of the sales contract and mortgage note does not create a material issue as to her capacity to contract at the time of execution. The law presumes that all adult persons have capacity to contract, and accordingly, where an exemption from liability to fulfill an engagement is asserted by reason of such want of

capacity, that fact must be strictly established. See Howard v. Howard, 112 Va. 566, 568, 72 S.E. 133 (1911). No particular degree of acumen is prescribed. See McGrue v. Brownfield, 202 Va. 418, 425, 117 S.E.2d 701 (1961). The test is whether the party had sufficient mental capacity to understand the nature of the transaction and to assent to its provisions. See Lohman v. Sherwood, 181 Va. 594, 607, 26 S.E.2d 74 (1943).

Blackburn fails to meet the standard of incapacity to contract because she does not aver that she lacked the mental capacity to contract at the time the sales contract, promissory note or subsidy repayment agreement were executed. There is no contention that she was insane, feebleminded, or mentally deficient at the time of execution.[2] Her mistaken belief as to the sales price and obligation under the note does not make her unable to contract. Weakness of the mind short of debilitating mental disease or defect, immaturity of reason, or mere absence of skill or experience upon the subject of the particular contract, do not afford a ground for relief. Cf. Lohman, 181 Va. at 607.

### III.

The debt under the note and subsidy agreement are enforceable against Blackburn

---

[2] The defendant avers that she is autistic and schizophrenic in a prior pleading. Autism, however, is not the equivalent of mental retardation. Autistic people can and do function normally. See Mental Health, Autism, http://www.webmd.com/content/article/60/67141.htm. In addition, while schizophrenia can cause a person to be legally incompetent, its symptoms can be treated with medication to allow a person with the disorder to function quite normally. See Schizophrenia, http://www.nimh.nih.gov/publicat/schizoph.cfm. Since no evidence has been introduced that the defendant's autism or schizophrenia made her incompetent to contract at the time the sales contract, promissory note or subsidy agreement were signed, nor does the defendant allege such in her brief in opposition to summary judgment, there is no material issue of incompetency on these grounds.

10

because there is no genuine material issue as to the validity of the contractual terms or the receipt of the benefits of the loan proceeds by Blackburn. The note and subsidy agreement cannot be voided because there was no mutual mistake at the time of execution and Blackburn had capacity to contract. Therefore, the Plaintiff's motion for summary judgment is **granted** and the defendant's motion for summary judgment is **denied**.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: This 24th day of March, 2006.

/s/ James C. Turk
James C. Turk
Senior United States District Judge